IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., and CEREMONY OF ROSES ACQUISITION LLC, | § § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:25-cv-01766 |
| vs. | § § § | |
| JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANY, | § § § § | |
| Defendants. | § | |

### PLAINTIFFS' COMPLAINT FOR TRADEMARK INFRINGEMENT AND LANHAM ACT VIOLATIONS

Plaintiffs, Bravado International Group Merchandising Services, Inc. and Ceremony of Roses Acquisition LLC, by their attorneys, files this complaint against defendants, alleging as follows:

### JURISDICTION AND VENUE

1. This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"). Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a), (b). Venue in this district is proper under 28 U.S.C. § 1391(b).

### PARTIES

2. Bravado International Group Merchandising Services, Inc., ("Bravado") is a California corporation with its principal place of business in Los Angeles, California.

3. Ceremony of Roses Acquisition LLC ("Ceremony ") is a Delaware limited liability joint venture with its principal place of business in New York, New York.

4. Ceremony and Bravado are hereinafter collectively referred to as "Plaintiffs".

5. Defendants John Does 1-100, Jane Does 1-100 and XYZ Company who are sued herein under fictitious names because their true names and capacities are unknown at this time. This complaint will be amended when their true names and capacities are ascertained.

6. Upon information and belief, the individual defendants and XYZ Company through its agents, servants and employees, will be present in and about the Southern District of Texas, Houston Division in connection with the claims asserted below and are or will be subject to the jurisdiction of this Court.

7. Defendants, and each of them, are individuals and business entities who, upon information and belief, act in concert and active participation with each other in committing the wrongful acts alleged herein. Defendants John Does 1-100, Jane Does 1-100, and XYZ Company are hereinafter referred to collectively as "Defendants."

## THE BACKGROUND OF THE ACTION

8. Plaintiffs are each engaged in the manufacture, distribution and sale of various types of merchandise sold and distributed at concerts and at retail stores of musical performers, including but not limited to T-shirts, jerseys, sweatshirts, hats, buttons, posters and tour books, (collectively "Tour Merchandise") which contain the trademarks, service marks, likenesses, logos and other indicia of musical performers (collectively "Trademarks").

9. The performer known as "KENDRICK LAMAR" is the trademark used by this performer in connection with his performing, recording, merchandising and other related services and goods in all aspects of the entertainment and other industries and to distinguish his services and goods from all other artists. Mr. Lamar has used his mark in connection with his services and goods for approximately 17 years.

10. Mr. Lamar has obtained Federal Trademark Registrations for his KENDRICK LAMAR trademarks: Federal Registration Number 5076690 for use in connection with: International Class ("IC") 025 clothing and IC 009 recordings; and Federal Registration Number 4595808 for use in connection with IC 041 entertainment services. These marks are incontestable.

11. The performer known as "SZA" is the trademark used by this performer in connection with her performing, recording, merchandising and other related services and goods in all aspects of the entertainment and other industries and to distinguish her services and goods from all other artists. SZA has used her mark in connection with her services and goods for nearly 15 years.

12. SZA has obtained Federal Trademark Registrations for her SZA trademark, Federal Registration Number 5008021 for use in connection with IC 025 for clothing, IC 041 entertainment services, and IC 009 recordings.

13. Pursuant to an agreement between Mr. Lamar and Bravado, Bravado possesses the exclusive right to utilize all Trademarks (namely his federally registered trademarks, service marks, likenesses, logos and other indicia) on and in connection with Tour Merchandise sold and offered for sale in the vicinity of Mr. Lamar's United States tour.

14. Pursuant to an agreement between SZA and Ceremony, Ceremony possesses the exclusive right to utilize all Trademarks (namely her federally registered trademarks, service marks, likenesses, logos and other indicia) on and in connection with Tour Merchandise sold and offered for sale in the vicinity of SZA's United States tour.

15. In addition to Bravado's sales of Mr. Lamar's Tour Merchandise and Ceremony's sales of SZA's Tour Merchandise, Plaintiffs Bravado and Ceremony have entered into an exclusive agreement to sell joint Tour Merchandise, including merchandise bearing the name, logos and

3

other indicia of the tour, "Grand National", and the Trademarks of both Mr. Lamar and SZA (collectively, the "Artists"). The Artists separate and joint authorized Tour Merchandise are hereinafter collectively referred to as the "Authorized Tour Merchandise".

16. The Artists have each used his or her Trademarks to identify officially authorized goods and services in interstate commerce and to distinguish their marks from those of others by, among other things, prominently displaying their Trademarks on Authorized Tour Merchandise, such as T-shirts, jackets, and other apparel and goods.

17. The Artists each have a decidedly strong and loyal following among those who attend popular music concerts and record buyers. The Artists each have appeared in concerts at major arenas and stadiums in the United States, which have been attended by millions of popular music enthusiasts.

18. As a result of the foregoing, each of the Artists' Trademarks has developed and now possesses secondary and distinctive meaning to purchasers of Authorized Tour Merchandise. Each Plaintiff and the Artists annually realize substantial income from the sale of the Authorized Tour Merchandise bearing the Artists' Trademarks.

19. On Wednesday, April 23, 2025, at NRG Stadium in Houston, Texas, the Artists will perform (the "Concert") and thereafter throughout the United States. Authorized Tour Merchandise bearing any or all of the Artists' Trademarks will be sold throughout the United States in connection with the Tour, including at the Concert.

## **DEFENDANTS' UNLAWFUL CONDUCT**

20. Defendants will sell and distribute unauthorized, infringing T-shirts, jerseys, caps and/or other merchandise bearing any or all of the Artists' Trademarks (the "Infringing

Merchandise") before, during and after the at Concert and its vicinity, and thereafter at subsequent concerts during the Tour.

21. The Infringing Merchandise is of the same general appearance as Plaintiffs' Authorized Tour Merchandise and is likely to cause confusion among prospective purchasers. Defendants' Infringing Merchandise is not authorized by the Artists or Plaintiffs. The Infringing Merchandise sold by Defendants is generally of inferior quality.

22. The manufacture, distribution and sale of Infringing Merchandise is likely to injure the reputation of the Artists which has developed by virtue of her/his public performances and the reputation for high quality associated with Plaintiffs and their Authorized Tour Merchandise.

23. The aforesaid acts by Defendants and others are likely to cause the purchasing public to believe that the sale and distribution of such Infringing Merchandise is authorized, sponsored or approved by the Artists and/or Plaintiffs and that such Infringing Merchandise is subject to the same quality control and regulation required by the Artists and/or Plaintiffs, despite the fact that this is not true. It also injures the Artists and Plaintiffs in that Defendants do not have to pay any royalty for these unlawful sales.

24. The aforesaid manufacture, distribution and sale of Infringing Merchandise bearing the any or all of the Artists' Trademarks constitutes a false designation of the source of origin of such goods and falsely describes and represents such merchandise. The use by Defendants and others of the Artists' Trademark also constitutes an attempt to palm off and appropriate to themselves the Artists' and Plaintiffs' exclusive rights therein.

25. Upon information and belief, Defendants and others have and will continue to engage in such infringing activities in this State and elsewhere in interstate commerce and are likely to continue such activities throughout the Tour, to the great injury of the Plaintiffs and the Artists.

26. Plaintiffs have no adequate remedy at law and will suffer irreparable harm and damage as a result of the aforesaid acts, in an amount presently incalculable.

## FIRST CLAIM FOR RELIEF
### (Infringement of Registered Trademark)

27. Plaintiffs reallege each allegation set forth in the paragraphs above.

28. By reason of the foregoing, Plaintiffs hereby assert a claim against Defendants for injunctive and monetary relief pursuant to 15 U.S.C. § 1114(b) with respect to Defendants' infringement of the registered mark.

## SECOND CLAIM FOR RELIEF
### (Violation of the Lanham Act)

29. Plaintiffs reallege each allegation set forth in the paragraphs above.

30. By reason of the foregoing, Plaintiffs hereby assert a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of Defendants' Infringing Merchandise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief against Defendants as follows:

A. As to All Claims For Relief, that Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be enjoined in this and all other districts in the United States, preliminarily during the course of this litigation and permanently from: 1) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the trademarks, service marks, likenesses, logos and other indicia of the Artists or any colorable variation or imitation thereof; and 2) representing that any products, merchandise or goods manufactured, distributed, sold, held

for sale or advertised by them is sponsored or authorized by Plaintiffs in this district or in any other district in which Plaintiffs seek to enforce this Court's injunction order.

  B. As to All Claims For Relief, that this Court order the United States Marshal, the local and state police or sheriff, off duty officers of the same, authorized agents of Plaintiffs, and/or any persons acting under their supervision to seize and impound any and all Infringing Merchandise which the Defendants attempt to sell, distribute or hold for sale at within or in the vicinity of the Artists' concerts on the Tour, including whether this occurs before, during or after the concerts.

  C. That Defendants deliver up for destruction any and all Infringing Merchandise.

  D. As to All Claims For Relief, that Defendants pay to Plaintiffs damages in an amount to be determined.

  E. As to All Claims For Relief, that Plaintiffs be awarded its costs, attorney's fees and such other and further relief as the Court deems to be just and proper.

Dated: April 17, 2025    Respectfully Submitted,

        By: /s/ Cara R. Burns
        Cara R. Burns, Esq.
        Attorney-In-Charge
        Southern District of Texas Bar No. 111129
        State Bar No. (CA) 137557
        Mims, Kaplan, Burns & Garretson
        28202 Cabot Road, Ste 300
        Laguna Niguel, California 92677
        Tel: (310) 314-1721
        Fax: (949) 340-9737